CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
4/5/2023
LAURA A. AUSTIN, CLERK
BY: s/ ARLENE LITTLE
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| **TERRY M.,**[1] | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No. 6:22-CV-17 |
| | ) |
| **KILOLO KIJAKAZI, Acting Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

**MEMORANDUM OPINION**

Plaintiff Terry M. ("Terry") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding him ineligible for Disability Insurance Benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Terry alleges that the Administrative Law Judge ("ALJ") erred by failing to properly resolve a conflict between the opinions of two state agency medical consultants, and by failing to consider whether he meets Listing 12.05(B) for an extreme limitation in remembering information. I conclude that the ALJ's decision is supported by substantial evidence. Accordingly, I **GRANT** the Commissioner's Motion for Summary Judgment (Dkt. 19) and **DENY** Terry's Motion for Summary Judgment (Dkt. 13).

**STANDARD OF REVIEW**

This court limits its review to a determination of whether substantial evidence supports

---

[1] Due to privacy concerns, I am adopting the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that courts use only the first name and last initial of the claimant in social security opinions.

the Commissioner's conclusion that Terry is not disabled under the Act. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This standard of review requires the Court to "look[] to an existing administrative record and ask[] whether it contains 'sufficien[t] evidence' to support the [ALJ's] factual determinations." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). "The threshold for such evidentiary sufficiency is not high," Biestek, 139 S. Ct. at 1154, and the final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Terry filed for DIB on March 24, 2020, alleging disability beginning July 11, 2019. Terry later amended his onset date to October 26, 2020. R. 14. Terry's date last insured was December 31, 2024; thus, he must show that his disability began on or before this date and existed for twelve continuous months to receive DIB. R. 16. 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). Terry's claims were denied by the Commissioner at the initial and reconsideration level of administrative review. R. 64–104.

On September 30, 2021, ALJ Linda Crovella held an administrative hearing to consider Terry's claims. R. 29–63. Counsel represented Terry at the hearing, which included testimony from vocational expert Adina Leviton. Id. On October 27, 2021, the ALJ entered a decision

analyzing Terry's claims under the familiar five-step process[2] and denying his request for benefits. R. 14–24.

The ALJ determined that Terry was insured at the time of the alleged disability and that he suffered from the severe impairments of neurocognitive disorder; alcohol and drug substance addiction disorder; and history of seizure and intracranial hemorrhage. R. 16. The ALJ determined that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 17–18. The ALJ concluded that Terry retained the residual functional capacity ("RFC") to perform a range of medium work, except that he can frequently climb ramps and stairs; never climb ladders, ropes and scaffolds; and cannot tolerate concentrated exposure to hazards. R. 18. The ALJ also imposed non-exertional restrictions that Terry can understand, remember and carry out very short and simple instructions and complete simple and routine tasks for two hour periods in an eight-hour workday; make simple work-related decisions regarding simple, repetitive work tasks; perform goal-oriented work that does not require strict production quotas and is not performed at a production rate or assembly line pace; respond appropriately to changes in the work setting that occur no more than occasionally or are gradually introduced; and be aware of normal hazards found in the workplace. R. 18–19.

The ALJ determined that Terry could not perform his past relevant work as a printer operator, but that he could perform jobs that exist in significant numbers in the national

---

[2] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

economy, such as laundry laborer, floor waxer, and hand packer. R. 22–23.  Thus, the ALJ concluded that Terry was not disabled. Id. Terry appealed the ALJ's decision and on March 7, 2022, the Appeals Council denied his request for review. R. 1–5.  This appeal followed.

## ANALYSIS

1. **Medical History**

Terry was hospitalized in June 2019 after losing consciousness, and was diagnosed with having a seizure, encephalopathy, hypertension, alcohol withdrawal and cocaine use. R. 518–20. Terry was again hospitalized in October 2019 for seizure-like activity. R. 294–305. Terry was 53 years old and reported drinking 3–4 beers a day. R. 304.  Terry was diagnosed with new onset seizure, intraparenchymal hemorrhage of the brain, alcohol withdrawal delirium, and accelerated hypertension. R. 296, 306.

Terry followed up on October 31, 2019, and reported feeling fairly well and taking his medications. R. 426.  Kenneth Swanson, N.P., assessed essential hypertension, alcohol abuse, and nontraumatic intracerebral hemorrhage. R. 427.  In January 2020, Terry reported drinking no alcohol after his seizure, and feeling well without complaint. R. 423.

In June 2020, Terry reported that he was seeking disability benefits and did not believe he could work a job on a regular basis. R. 440. Terry noted memory loss that causes problems in all aspects of his life. Id.  Mr. Swanson referred Terry to neurology for memory loss after brain hemorrhage. R. 441.

In July 2020, Terry saw Mr. Swanson and asked him to fill out disability forms because "he just doesn't think that he could handle working a job." R. 437.  Mr. Swanson noted that "[i]t is not clear what prevents him from being unable." Id. Terry reported that he did not take his blood pressure medications yet that day.  Mr. Swanson noted that Terry was pleasant, alert and

oriented, well developed and well nourished. His responses on a neurologic exam were somewhat slow and blunted, but he was oriented. Mr. Swanson noted "some cognitive problems are suspected." Id.  In August 2020, Terry reported that he was not taking two of his prescribed medications, and had elevated blood pressure. R. 490. His physical examination was unremarkable, and he was assessed with essential hypertension. R. 491. Terry next followed up in January 2021, and reported occasional lightheadedness when he's been standing for a while, but otherwise feels well. R. 454.

On March 2, 2021, Terry underwent a psychological evaluation with Christopher Cousins, Ph.D. R. 458–62. Terry reported memory difficulties due to his seizures. R. 459.  Terry scored a Full-Scale IQ of 69 on the Wechsler Adult Intelligence Scale-Fourth Edition (WAIS-IV), which Dr. Cousins noted is in the highest end of the mild disability range. R. 460.  Terry's scores on the Wechsler Memory Scale-Fourth Edition (WMS-IV) indicated deficient memory functioning across 4 of the 5 indices. R. 461.  Dr. Cousins assessed unspecified neurocognitive disorder and alcohol use disorder.  Dr. Cousins suspected that Terry "functioned at a cognitive level somewhere between the below average to average range prior to the onset of what appears to be some neurocognitive impairment." R. 461.  Dr. Cousins determined that Terry was currently capable of performing simple and repetitive tasks and may require repetition of instructions due to memory deficits. R. 462. He found no psychiatric reason that Terry would not be able to maintain regular attendance in the workplace, but that he may have some difficulties completing a normal workday or workweek without interruptions and performing work activities on a consistent basis.  He found that Terry was capable of accepting instructions from supervisors and appropriately interacting with coworkers and the public, but would have some difficulties coping with the typical stressors encountered in competitive work. Id.

On March 5, 2021, Terry visited his nephrologist and reported that he was drinking six cans of beer twice a week. R. 475. Terry continued to report no seizures after his hospitalization and that he was not using anti-seizure medications R. 473.

### 2. Physician Opinions

On May 20, 2020, state agency medical consultant Richard Surrusco, M.D., reviewed Terry's records and determined that he could occasionally lift and carry 20 pounds; frequently lift and carry 10 pounds; stand and/or walk about 6 hours in an 8-hour workday; never climb ladders, ropes or scaffolds; and should avoid even moderate exposure to hazards. Dr. Surrusco explained that Terry reported no problems performing personal care, preparing frozen dinners and sandwiches, washing dishes, doing laundry and ironing, sweeping floors and occasionally mowing. R. 72–73. Dr. Surrusco noted that Terry has not driven in over 20 years, goes shopping twice a month with his sister and can lift 10-15 pounds. R. 74.

On May 20, 2020, state agency medical consultant William Carne, Ph.D., reviewed Terry's records and determined that his mental impairments were non-severe and he had mild impairments in the domains of understanding, remembering or applying information; concentration, persistence, or maintaining pace; and adapting or managing oneself. R. 70. Dr. Carne noted Terry's history of seizure and intraparenchymal hemorrhage, but also noted that he had no further seizures since his last discharge in October 2019 and his activities of daily living were not reflective of any mental limitations. Id.

On March 4, 2021, state agency medical consultant Bert Spetzler, M.D., reviewed Terry's records on reconsideration and determined that he could lift and carry 50 pounds occasionally and 25 pounds frequently; stand and/or walk 6 hours in an 8-hour workday; sit for 6 hours in an

8-hour workday; frequently climb ramps and stairs; never climb ladders, ropes or scaffolds; frequently balance; and should avoid concentrated exposure to hazards. R. 94–96. Dr. Spetzler explained that Terry has a past diagnosis of an intraparenchymal hemorrhage of the brain and seizures, and that the prior administrative findings on his initial applications are consistent with the evidence in Terry's claim. R. 95.

On March 4, 2021, state agency medical consultant Louis Perrott, Ph.D., reviewed Terry's records and determined that he had moderate impairments in the domains of understanding, remembering or applying information; concentration, persistence, or maintaining pace; and adapting or managing oneself. R. 91. Dr. Perrott noted that Terry has shown a decline in prior cognitive functioning after his brain hemorrhage, but remains able to perform simple and routine tasks. R. 92. Dr. Perrott found that Terry has moderate limitations with carrying out detailed instructions; maintaining attention and concentration for extended periods; completing a normal workday and workweek without interruptions and performing at a consistent pace without an unreasonable number and length of rest periods; responding appropriately to changes int eh work setting; and being aware of normal hazards and taking appropriate precautions. R. 96–99. Dr. Perrott determined that Terry was capable of carrying out 1–2 step instructions, making simple work-related decisions; completing simple, repetitive work tasks; and being aware of normal hazards found in the workplace. R. 99–100.

3. **Conflict Between Physician Opinions**

Terry asserts that the ALJ failed to sufficiently explain why she adopted Dr. Spetzler's conclusion that Terry could perform medium work (R. 94) instead of Dr. Surrusco's determination that Terry was limited to light work (R. 72). The Commissioner contends that the

7

ALJ appropriately applied the regulations and articulated her consideration of the medical opinions in the record.

Terry filed his application in March 2020; thus, 20 C.F.R. § 404.1520c governs how the ALJ considered the medical opinions in this case.[3] When making an RFC assessment, the ALJ must assess every medical opinion received in evidence. The regulations provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). In evaluating the persuasiveness of medical opinions, the ALJ will consider five factors: supportability, consistency, relationship with the claimant, specialization, and other factors that tend to support or contradict the opinion. The most important factors considered are supportability and consistency.[4] Id. The ALJ is not required to explain the consideration of the other three factors. Green v. Saul, No. 5:20-cv-1301-KDW, 2021 WL 1976378, at *6 (D.S.C. May 18, 2021). However, when "medical opinions or prior administrative medical findings about the same issue are equally well–supported . . . and consistent with the record," the Commissioner will articulate how he considered the following factors: the medical source's relationship with the claimant, specialization, and other factors that tend to support or contradict a medical opinion. 20 C.F.R. §§ 404.1520c(b)(3).

Here, the ALJ referenced the appropriate regulations in her analysis and considered the

---

[3] 20 C.F.R. §§ 401.1520c, 416.920c applies to claims filed on or after March 27, 2017.

[4] "Supportability" means "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation." Revisions to Rules, 82 Fed. Reg. at 5853; see also 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). "Consistency" denotes "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." Revisions to Rules, 82 Fed. Reg. at 5853; see also 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

supportability and consistency of Drs. Spetzler and Surrusco's opinions. The ALJ noted that Dr. Spetzler's opinion that Terry could perform a range of medium work is supported by Terry's history of an acute hemorrhage after suspected seizure activity in late 2019. R. 21. The ALJ citied the specific medical records on which she relied for this finding. The ALJ also found Dr. Spetzler's conclusions consistent with Terry's reports of continued lightheadedness and the ability to do some light cooking, laundry, light cleaning, take out the trash, and wash dishes, citing to Terry's testimony at the administrative hearing. R. 21. Thus, she found Dr. Spetzler's opinion persuasive. Id.

The ALJ found Dr. Surrusco's opinion that Terry was limited to light work unsupported by the continued findings of no focal neurological deficits after Terry's acute hemorrhage and suspected seizure activity. The ALJ cited to multiple records in support of this conclusion. Id. The ALJ also noted that Dr. Surrusco's opinion was inconsistent with Dr. Spetzler's opinions, and thus found the opinion unpersuasive. Id.

Terry asserts that the ALJ improperly relied upon his minimal daily activities to conclude that he can perform medium level work. However, the ALJ did not solely rely upon Terry's daily activities to determine that he can perform medium level work, but rather considered them as one of several factors in the RFC analysis. The regulations specifically provide that an ALJ may consider a claimant's daily activities, among other factors, in determining the extent to which a claimant's symptoms limit his capacity for work. See 20 C.F.R. § 404.1529(c). Here, the ALJ appropriately considered Terry's daily activities as one factor in determining the extent to which symptoms affected his capacity to work. See Arakas v. Comm'r., 983 F.3d 83, 99 (4th Cir. 2020) ("In evaluating the intensity, persistence, and limiting effects of a claimant's symptoms, ALJs may consider the claimant's daily activities.") (citing 20 C.F.R § 404.1529(c)(3)(i));

see e.g. Wooten v. Berryhill, No. 1:17-CV-190-DCK, 2018 WL 3014412, at *5 (W.D.N.C. June 15, 2018) (noting that, "[i]nstead of simply equating an ability to perform daily activities with an ability to [work], the ALJ used evidence of Plaintiff's daily activities as just one factor in his ultimate RFC determination"); Heyward v. Berryhill, No. 8:16-CV-03003-JMC, 2018 WL 1417526, at *5 (D.S.C. Mar. 21, 2018) (finding that the ALJ did not err in considering plaintiff's activities of daily living, as 20 C.F.R. § 404.1529(c)(3)(i) provides that "claimant's daily activities is one factor the ALJ will consider when evaluating a claimant's symptoms, including pain").

Terry also argues that the ALJ erred by using the inconsistency between Dr. Spetzler and Surrusco's opinions as a reason to find Dr. Surrusco's opinion unpersuasive. However, the ALJ is tasked by the Regulations with considering the consistency of each opinion, which is defined as "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." Revisions to Rules, 82 Fed. Reg. at 5853; see also 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). Thus, it was proper for the ALJ to note the contradiction between the physicians' opinions, together with the other reasons she provided to find one opinion more persuasive than another.

While the ALJ's analysis of the medical opinions was sparse, she considered the supportability and consistency of both opinions and provided reasons, supported by the record, to adopt Dr. Spetzler's findings rather than Dr. Surrusco's. The ALJ's explanation established the required logical bridge from the evidence to her conclusion.

### 4. Listing 12.05(B)-Intellectual Disorder

Terry also asserts that the ALJ erred by finding that Terry had a moderate limitation with remembering information. Terry argues that the ALJ should have found his memory limitation to be "extreme" and thus conclude that he meets the requirements of Listing 12.05(B).

A "listed impairment" is one considered by the Social Security Administration to be "severe enough to prevent an individual from doing any gainful activity" and if a claimant's impairments meet all the criteria of a particular listing, or are medically equivalent to a listing, the claimant is considered disabled. 20 C.F.R. § 416.925(a), 20 C.F.R. § 416.920(d). The medical criteria defining the listed impairments is set at a higher level of severity than the statutory standard disability. Sullivan v. Zebley, 493 U.S. 521, 532 (1990). Further, the claimant has the burden of proving that his or her impairments meet or medically equal a listed impairment. Hancock v. Astrue, 667 F.3d 470, 476 (4th Cir. 2012). As a result, a claimant must present medical findings equal in severity to all the criteria for that listing: "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan, 493 U.S. at 530–31; see also 20 C.F.R. § 416.925(c)(3).

Listing 12.05(B) (Intellectual Disorder) requires that a claimant have 1) a full-scale IQ of 70 or below; 2) significant deficit in adaptive functioning currently manifested by an extreme limitation of one or marked limitations of two of the domains of mental functioning; and 3) evidence about current intellectual and adaptive functioning and the history of the disorder demonstrating or supporting the conclusion that the disorder began prior to age 22. 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.05B.

Terry argues that he meets the requirements of Listing 12.05(B) based on Dr. Cousins' report that his Full-Scale IQ score is 69, and his memory was deficient in four of the five indices

11

of the WMS-IV. R. 461. Terry specifically notes that the percentile for his auditory memory, visual working memory and immediate memory were below 1 percent. Id. Terry alleges that these percentiles show an "extreme deficit" in remembering information. Terry does not address the third requirement for the Listing—evidence that the disorder began before age 22.

     I find that the ALJ appropriately assessed Terry with a moderate limitation in remembering information, and Terry does not meet the requirements for Listing 12.05(B). First, the record does not contain evidence that Terry suffered from an intellectual disability prior to age 22. Indeed, Dr. Cousins suspected that Terry functioned at a cognitive level somewhere between the below average to average range prior to the onset of his neurocognitive impairment. R. 461. The records also suggest that Terry's memory issues are fairly recent and related to his seizures and/or alcohol and cocaine use, with Terry reporting to Dr. Cousins that his memory loss was related to his seizures. Id. Additionally, Dr. Cousins noted that Terry's short-term memory difficulties due to seizures are "complicated a bit by what appeared to be a history of chronic alcohol use." Id. Further, even considering Terry's current memory deficits, Dr. Cousins determined that he was capable of performing simple, repetitive tasks, although he may require repetition of instructions. R. 462.

     The ALJ considered Terry's reports of memory difficulties, and noted that most examinations revealed no memory loss, normal moods and affects, good eye contact, and no reports of concentration difficulties. R. 20. The ALJ determined that Terry had a moderate limitation with understanding, remembering or applying information, noting his reports of difficulties, and limited him to jobs with very short and simple instructions and simple and routine tasks, with simple work-related decisions regarding simple, repetitive work-tasks. R. 17, 18. It is the job of the ALJ to weigh evidence and resolve any evidentiary conflicts. The ALJ's

conclusion that Terry suffers from a moderate impairment of remembering information is supported by substantial evidence in the record, and the evidence does not support Terry's argument that he meets all of the requirements of Listing 12.05(B).

## CONCLUSION

For the foregoing reasons, an order will be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the Commissioner, **DENYING** Terry's motion for summary judgment and **DISMISSING** this case from the Court's docket.

Entered: April 5, 2023

*Robert S. Ballou*

Robert S. Ballou
United States District Judge